IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TEAMSTERS LOCAL UNION NO. 727
PENSION FUND, *et al.*,

        Plaintiffs,

        v.

CAPITAL PARKING, *et al.*,

        Defendants.

No. 19-cv-00837
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, a multiemployer pension fund, a multiemployer welfare benefit fund, a multiemployer employee benefit fund, a labor management cooperation committee, and members of their respective boards of trustees,[1] have brought suit against Defendants Capital Parking L.L.C. (Capital Parking), James Weiss (Weiss), Iman Bambooyani (Bambooyani), Blk & Wht Parking Management LLC, Blk & Wht Valet, LLC, and EZ Parking LLC (collectively, Defendants).[2] Plaintiffs bring claims under Section 301 of the Labor Management Relations Act of 1947 (the LMRA), 29 U.S.C. § 185, various provisions of the Employee Retirement Income Security Act of

---

[1]Plaintiffs are: Teamsters Local Union No. 727 Pension Fund (Pension Fund), Teamsters Local Union No. 727 Health & Welfare Fund (Welfare Fund), Teamsters Local Union No. 727 Legal & Educational Assistance Fund (L&E Fund) (collectively, the Funds), and Parking Industry Labor Management Committee (the PILMC), along with individuals John T. Coli, Jr., Zachary Frankenbach, Michael DeGard, Nicholas Micaletti, John McCarthy, Gregory T. Youmans, Carl S. Tominberg, Robert Sheehy, James Buczek, and Michael Prussian (collectively, the Trustees).

[2]While "Capital Parking, a general partnership" is listed as a defendant, it has not yet been served and it has not filed an appearance.

1974, as amended (ERISA), 29 U.S.C. §§ 1001–1461, and various common law claims, seeking over $77,000.00 in unpaid contributions. R. 52, SAC.[3] Plaintiffs also seek to hold Weiss and Bambooyani, as the owners of Capital Parking, personally liable for the unpaid contributions. *Id.*

Before the Court is Defendants' Motion to Stay Case. R. 137, Mot. Stay. For the reasons that follow, the Court denies Defendants' motion.

## Background

Defendants provide valet parking services in Chicago, Illinois. SAC ¶ 38. According to Plaintiffs, Defendants are employers within the meaning of Section 301(a) of the LMRA (29 U.S.C. § 185(a)) and Section 3(5) of ERISA (29 U.S.C. § 1002(5)). *Id.* ¶ 39. Weiss and Bambooyani are or were the managers and owners of each of the corporate Defendants. *Id.* ¶¶ 41–43.

On or around July 10, 2015, the Teamsters Local Union No. 727 (the Union) entered into a commercial collective bargaining agreement (Commercial CBA) with an entity known as Capital Parking. SAC ¶ 73. On or around September 12, 2014, the Union entered into a valet collective bargaining agreement (Valet CBA) with an entity known as Capital Parking. *Id.* ¶ 76. The Valet CBA expired on June 30, 2018. *Id.* On or around October 31, 2014, an entity known as Capital Parking executed a rider to both CBAs "to specify the classification of certain valet parking locations." *Id.* ¶ 79. The Commercial CBA obligates Defendants to contribute to each of the Funds,

---

[3] Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

and the Valet CBA obligates Defendants to contribute to the Welfare Fund, the L&E Fund, and the PILMC. *Id.* ¶¶ 83, 87, 90. The trust agreements for the Funds and the PILMC authorize the Trustees to collect delinquent contributions. *Id.* ¶ 91. Plaintiffs allege that each of the Defendants are alter egos of one another and all Defendants are obligated to pay the required contributions. *Id.* ¶¶ 100–01.

According to Plaintiffs, based on a payroll audit conducted for the time period of November 1, 2015 through July 31, 2017, Defendants are delinquent in their contributions to the Funds and the PILMC as follows: $9,321.40 for the Pension Fund (SAC ¶ 104); $59,029.40 for the Welfare Fund (*id.* ¶ 112); $8,475.15 for the L&E Fund (*id.* ¶ 125); and $892.00 for the PILMC (*id.* ¶ 138), for a total of $77,717.95. They also owe interest, liquidated damages, and attorneys' fees and costs. *See generally* SAC. In addition to seeking recovery under the LMRA and ERISA, Plaintiffs attempt to pierce the corporate veil of the corporate Defendants to reach Weiss and Bambooyani individually. *Id.*

Plaintiffs filed this lawsuit on February 8, 2019 (R. 1), and the parties exchanged initial written discovery pursuant to the Court's Mandatory Initial Discovery Pilot Program (MIDP). R. 43, 44. Plaintiffs filed their SAC on July 30, 2019. SAC. Pursuant to the MIDP, on December 9, 2019, the Court set a discovery schedule with a discovery completion deadline of June 26, 2020. R. 93.[4] At the request of the parties, the Court has extended this deadline multiple times, with the most recent extension on December 15, 2020 to April 15, 2021. R. 136.

---

[4]This case was originally assigned to Judge Feinerman, before being reassigned to Judge Valderrama on September 28, 2020. R. 128.

On October 24, 2019, the United States filed a criminal complaint against Illinois State Representative Luis Arroyo (Arroyo) alleging political corruption and bribery (Case No. 19-cr-00805-1, R. 1), and on October 1, 2020, the United States filed a superseding indictment, adding Weiss as a co-defendant (case No. 19-cr-00805-2, R. 41, Crim. Indict.). Weiss was a manager of an entity known as Collage LLC (Collage) which was involved in the sweepstakes gaming industry. Crim. Indict. ¶ 1(c). Arroyo controlled another entity known as Spartacus 3 LLC (Spartacus). *Id.* ¶¶ 1(b), 1(e). State Senator A is an Illinois State Senator who was cooperating with law enforcement authorities. *Id.* ¶ 1(d). Per the superseding indictment, from around 2018 through around October 2019, Weiss and Arroyo "knowingly devised, intended to devise and participated in a scheme to defraud the people of Illinois of the intangible right to the honest services of Arroyo and State Senator A through bribery and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises." *Id.* ¶ 2. Specifically, Weiss and Arroyo agreed that Weiss would make bribe payments to Spartacus and a nominee of State Senator A in exchange for State Senator A's and Arroyo's "sponsorship of, votes on, and assistance with the enactment of legislation related to the sweepstakes industry, Weiss, and Collage." *Id.* ¶ 3. Additionally, Weiss, through Collage, made further bribe payments to Weiss, through Spartacus, in exchange for promotion of the enactment of legislation related to the sweepstakes industry. *Id.* ¶¶ 4–6. Arroyo also offered State Senator A to have Weiss pay State Senator A bribes in exchange for his promotion of the same legislation. *Id.* ¶ 10. The United States brings eight counts

4

total, seven of which are against Weiss. *See generally* Crim. Indict. On December 22, 2020, Defendants filed their motion to stay the case pending the adjudication of a criminal indictment filed by the United States of America against Weiss. Mot. Stay.

## Standard of Review

A court has the inherent power to stay its proceedings, which stems from its inherent power to control its docket. *Advanced Dermatology v. Fieldwork, Inc.*, 2021 WL 3077663, at *9 (N.D. Ill. July 21, 2021) (citing *Fauley v. Heska Corp.*, 112 F. Supp. 3d 775, 779 (N.D. Ill. 2015)); *see also Clinton v. Jones*, 520 U.S. 681, 707 (1997) (a court has broad power to stay proceedings incidental to its power to control its own docket). "While the Court has the inherent power to stay its proceedings, the Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings." *Jones v. City of Indianapolis*, 216 F.R.D. 440, 450 (S.D. Ind. 2003).

Courts in this District consider six non-exhaustive factors to determine whether a stay should be granted: "(1) whether the civil and criminal proceedings involve the same subject matter; (2) whether the government has initiated both proceedings; (3) the posture of the criminal proceeding; (4) the effect on the public interest of granting or denying a stay; (5) the interest of Plaintiff in proceeding expeditiously, and the potential prejudice that Plaintiff may suffer from a delay; and (6) the burden that any particular aspect of the civil case may impose on Defendants if a stay is denied." *Commodity Futures Trading Comm'n v. Nowak*, 2020 WL 3050225, at *3 (N.D. Ill. June 8, 2020) (citing *Salcedo v. City of Chi.*, 2010 WL

2721864, at *2 (N.D. Ill. July 8, 2010)). "[T]he granting of a stay is the exception, not the rule, and the party seeking the stay has the burden of demonstrating it is necessary." *RLJCS Enters., Inc., v. Pro. Benefit Tr., Inc.*, 2004 WL 2033067, at *2 (N.D. Ill. Sept. 2, 2004). The Court examines each factor in turn.

## Analysis

As a preliminary matter, the Court notes that while Defendants cite the six factors courts consider in determining whether to stay a civil proceeding pending resolution of a criminal matter, Defendants fail to meaningfully apply each factor in this case. Mot. Stay. Plaintiffs, on the other hand, address each factor in their Response. R. 141, Resp. Incredibly, in their Reply, Defendants once again fail to meaningfully address the six factors. R. 144, Reply. Nevertheless, the Court examines each factor.

## I.    Same Subject-Matter

The first factor is whether or the extent to which the issues in the criminal and civil matter overlap. This civil case is an ERISA action to recover unpaid pension contributions. ERISA was enacted "to protect employee pension plans from underfunding." *Loc. 705 Int'l Brotherhood of Teamsters Pension Fund v. Gradei's Express Co., Inc.*, 2020 WL 1530737, at *3 (N.D. Ill. Mar. 31, 2020) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 803 (7th Cir. 1999)). As amended by the MPPAA, it "requires an employer to make contributions to a multiemployer pension plan 'in accordance with the terms and conditions of such a plan.'" *Bd. of Trs. of the Auto. Mechs.' Loc. No. 701 Union and*

*Indus. Pension Fund v. 6516 Ogden Ave., LLC*, 170 F. Supp. 3d 1179, 1182 (N.D. Ill. 2016) (quoting 29 U.S.C. § 1145).

In this case, Plaintiffs allege, among other things, that Weiss and Bambooyani used the corporate forms of the corporate Defendants to avoid paying contributions to the Funds that benefit their employees. *See generally* SAC. Weiss' criminal case, on the other hand, involves his bribery of a state senator in connection with his gambling business. *See generally* Crim. Indict. While not addressing this factor directly, Defendants argue that Plaintiffs have placed Weiss' personal finances at issue in this civil case because Plaintiffs seek to hold Weiss personally liable for their damages. Mot. Stay at 3. Alternatively, Defendants note that Plaintiffs seek to pierce the corporate veil of the businesses that entered into the contract with Plaintiffs on the theory that Weiss is an alter ego of those businesses. *Id.* The Court disagrees. The fact that in this civil action, Plaintiffs seek to hold Weiss individually liable and that in the criminal action, the government is inquiring into his personal finances does not make the two actions ones that involve the same subject matter. Indeed, Defendants fail to cite any case that supports this proposition. Moreover, as Plaintiffs correctly highlight, this civil case involves Weiss' valet parking business, not his gambling business. Resp. at 6. And Defendants admit that it is unclear what information regarding his personal information "could be used against him at this point." *Id.* at 7 (citing Mot. Stay at 10). Defendants have failed to meet their burden, as the movants, in showing that the ERISA action brought to recover unpaid pension

contributions and the political corruption criminal case involve the same subject matter. This factor weighs against a stay.

## II.    Both Actions Brought by the Government

Under the second factor, courts consider whether the government has brought both actions. If the government is a party to both actions, "there is a danger that the government may use civil discovery to obtain evidence and information for use in its criminal prosecution, and by doing so, circumvent the Fifth Amendment rights against self-incrimination." *Cruz v. Cty. of DuPage*, 1997 WL 370194, at *3 (N.D. Ill. June 27, 1997). But, here, because the United States is not a party to the civil lawsuit, the concern that the government may use the civil discovery process to obtain evidence to use in its criminal proceedings is not present. *Cruz*, 1997 WL 370194, at *3; *see also Salcedo v. City of Chi.*, 2010 WL 2721864, at *2 (N.D. Ill. July 8, 2010). Therefore, this factor also weighs against a stay.

## III.    Posture of Criminal Proceeding

The third factor considers the posture of the criminal proceeding. Weiss was indicted on October 1, 2020 for allegedly bribing an Illinois state senator. Crim. Indict. Defendants, as the proponents of the stay, fail to provide any information as to the status of the criminal proceeding in their motion. Instead, in their Reply, Defendants posit that the majority of criminal cases end in plea bargains and that could happen here. Reply at 6. True enough, but the issue is whether, given the posture of the criminal proceedings, a stay is warranted. Defendants present no cogent argument and fail to meet their burden as to this factor. And the Court finds

8

that this factor weighs against a stay, especially considering that the criminal case involving Weiss concerns a different subject matter than that in this civil case. *Contra United States v. Michelle's Lounge*, 1992 WL 194652, at *2 (N.D. Ill. Aug. 6, 1992) ("Conducting civil discovery while the *related* criminal investigation is continuing would compromise that investigation.") (emphasis added).

## IV.  Public Interest

For the fourth factor, courts consider the public interest. "The public has an interest in the prompt disposition of civil litigation." *Chagolla v. City of Chi.*, 529 F. Supp. 2d 941, 947 (N.D. Ill. 2008). "On the other hand, the public has an interest in ensuring that the criminal process can proceed untainted by civil litigation." *Id.* ("The possibility that the orderly progress of the criminal cases and investigations-particularly those involving the exact same incidents at issue in the present case-will be hindered by issues that could arise from ongoing civil discovery is significant enough to be worthy of consideration."). The key inquiry is "whether a stay would enable the defendants to engage in some continuing wrong." *Cruz*, 1997 WL 370194, at *3. Again, Defendants fail to advance any developed argument as to how this civil litigation would taint a largely unrelated criminal case against Weiss. No matter, as the Court finds that this factor weighs against a stay. Again, because the incidents at issue here are unrelated to the incidents at issue in the criminal case, the Court is unpersuaded that this civil matter will hinder the progress of the criminal proceedings.

## V. Plaintiffs' Interest in Expeditious Resolution

As for the fifth factor, courts examine a plaintiff's interest in proceeding expeditiously. It is patently obvious that the entry of a stay results in a delay on a plaintiff's prompt resolution of his or her case. Plaintiffs initiated this lawsuit on February 8, 2019. R. 1. The parties have engaged in some written discovery but more than two years later, this case remains in a holding pattern. Staying this case pending resolution of a criminal case that is in the early stages works against a prompt resolution of this civil case. Defendants provide no information on the finality of the criminal case, admitting that "they have no idea." Reply at 6. And their contention that Plaintiffs cannot claim an immediate need for funds falls flat. *Id.* at 7. Even though Plaintiffs contend in their Response that if this case is stayed for years, witnesses' memories will fade and documents may be lost or destroyed (Resp. at 10), Defendants entirely ignore this argument in their Reply. This factor also weighs against a stay.

## VI. Burden on Defendants

Finally, with the sixth factor, courts examine the burden that any particular aspect of the proceedings may impose on the defendant. "Any individual Defendant who is forced to respond to discovery requests will face the choice of whether to claim or waive his or her Fifth Amendment privilege against self-incrimination and thereby face the risk of adverse inference in his civil case." *Salcedo*, 2010 WL 2721864, at *3 (citing *Chagolla*, 529 F. Supp. 2d at 947). Again, as noted by Plaintiffs, Defendants fail to specifically address this factor. Resp. at 11.

As best the Court can discern, Defendants argue generally that in light of the superseding indictment the government filed in October 2020 against Weiss for alleged bribery, any proceedings involving Weiss' personal finances should be stayed. Mot. Stay at 4. Defendants argue that Weiss is placed in the untenable situation of either producing discovery in this civil matter that could be used against him in the pending criminal case or invoking his Fifth Amendment right against self-incrimination, which can result in an adverse inference against him. *Id.* at 2, 5. But, as Plaintiffs point out, Weiss has not yet invoked his Fifth Amendment right in any prior written discovery responses and does not identify any discovery requests in which he might invoke such a right. Resp. at 4. As discussed above in relation to the second factor, the government is not a party in the civil suit, which alleviates the concern that the government may use civil discovery to obtain evidence for use in its criminal prosecution, and by doing so, circumvent the Fifth Amendment rights against self-incrimination. *See Cruz*, 1997 WL 370194, at *3. And the private parties in this suit have the ability to enter into a protective order to prevent public disclosure of document productions or deposition testimony (*id.* at 11), an argument which, again, Defendants ignore in their Reply. Defendants have failed to meet their burden, and this sixth factor also weighs against a stay.

11

## Conclusion

For the foregoing reasons, because each factor weighs against a stay, the Court denies Defendants' Motion to Stay [137].


Dated: August 20, 2021

_____
United States District Judge
Franklin U. Valderrama

12